CARLIE CHRISTENSEN, United States Attorney (No. 633)
TREY MAYFIELD, Assistant United States Attorney (*provisionally admitted*)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

FILED
U.S. DISTRICT COURT

2010 AUG -4  P 4: 17

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. |
| Plaintiff, | : | |
| | : | INDICTMENT |
| v. | : | |
| | | Viol. 18 U.S.C. §§, 1343 (Wire Fraud), 1957 |
| JOSE ARTURO RIFFO and | : | (Money Laundering), and 2 (Aiding & |
| ALAN C. MONSON, | | Abetting). |
| | : | |
| Defendants. | | Case: 2:10-cr-00686 |
| | : | Assigned To : Benson, Dee |
| | | Assign. Date : 8/4/2010 |
| | | Description: USA v. |

The Grand Jury charges:

## BACKGROUND

**The Defendants**

1.     At all times relevant to this Indictment, defendant JOSE ARTURO RIFFO

("defendant RIFFO") was a resident of Salt Lake County, Utah, and controlled the following

bank accounts, among others:

- Savings Account # XXXXXX3675 - at JP Morgan Chase Bank, a financial
  institution as defined in 31 U.S.C. § 5312(a)(2)(A), in Salt Lake City, Utah, held
  in the name of Dippardo Financial & Guaranty Group, a company controlled by
  defendant RIFFO;

- Checking Account # XXXXXX8220 - at JP Morgan Chase Bank, a financial institution as defined in 31 U.S.C. § 5312(a)(2)(A), in Salt Lake City, Utah, held in the name of Dippardo Financial & Guaranty Group, a company controlled by defendant RIFFO;

2.     At all times relevant to this Indictment, defendant ALAN C. MONSON

("defendant MONSON") was a resident of Salt Lake County, Utah.

### THE SCHEME AND ARTIFICE TO DEFRAUD

3.     From a date on or before September 2005 to around March 2006, in the Northern

Division of the District of Utah,

### JOSE ARTURO RIFFO and
### ALAN C. MONSON,

defendants herein, knowingly executed and intended to execute a scheme and artifice to defraud

and to obtain money from J.S. by means of false and fraudulent pretenses, representations, and

promises, in that defendants RIFFO and MONSON falsely represented that funds provided by

J.S. would be invested in the development and manufacture of personal data storage devices

known as "Crypto Cards," when in fact no such investment project existed, and the funds were

used to personally enrich the defendants.  In execution and furtherance of such scheme and

artifice to defraud, defendants RIFFO and MONSON performed, and caused to be performed, the

acts described below.

2

## OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

4.      It was the object of the scheme and artifice to defraud for defendants RIFFO and

MONSON to persuade J.S. that new personal data storage devices known as the "Crypto Cards"

were being developed for manufacture by companies controlled by defendant RIFFO, and that by

persuading J.S. to invest in that non-existent enterprise, defendant RIFFO could divert the

investment funds to himself while defendant MONSON would be paid a commission by J.S. for

having introduced him to defendant RIFFO.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The scheme and artifice to defraud was accomplished in the following manner and

through the following means:

5.      It was part of the scheme and artifice to defraud, that starting in around August

2005, defendant MONSON, who was defendant RIFFO's business partner, contacted J.S. for the

purpose of setting up a meeting in which RIFFO would tell J.S. about a new, secret technology

that RIFFO was developing.

6.      It was further a part of the scheme and artifice to defraud that on or about

September 8, 2005, J.S. met with defendants RIFFO and MONSON, as well as witnesses W.W.

and G.S. RIFFO told J.S. that RIFFO's companies were in the process of developing a new

technology called the "Crypto Card," that would permit, among other things, an individual's

DNA profile to be placed on a device that was slightly larger than a credit card. Defendant

MONSON told J.S. the technology was real and ready for mass production. Defendant RIFFO

showed J.S. several thick presentation books purportedly pertaining to the Crypto Card

technology being developed by RIFFO's companies, Crypto Corporation, Inc. ("Crypto") and

3

Global Database Information Systems, Inc. ("Global").  RIFFO told J.S. that MONSON and he were a Director and President, respectively, of the companies.

      7.      It was further a part of the scheme and artifice to defraud that defendant RIFFO told J.S. he had developed two cards, the Crypto Card, and Glodis Crypto Card, the latter of which could also hold a person's medical records.  RIFFO claimed the cards had their own operating systems, were encrypted, could store substantial amounts of financial data, were virtually indestructible, were automatically powered, and would last 200 years.

      8.      It was further a part of the scheme and artifice to defraud that defendant RIFFO also told J.S. that he would have to invest in Crypto and Global in order to receive the full disclosure of the technology, including being able to see a prototype of the card.  RIFFO also stated there were patents on the Crypto Card technology.

      9.      It was further a part of the scheme and artifice to defraud that at a subsequent meeting on or about September 16, 2005 arranged by defendant MONSON, defendant RIFFO told J.S. that he was a quantum physicist and nuclear engineer with his own laboratory, worked with DNA worldwide, and thoroughly understood how the human genetic code worked.  RIFFO further claimed that he was associated with the U.S. Government, that the U.S. Government used his technology, and that other well-known individuals had expressed a desire to invest in the Crypto Card technology.

      10.     It was further a part of the scheme and artifice to defraud that another meeting was held on or about September 19, 2005 among J.S., W.W., and defendants RIFFO and MONSON, in which RIFFO represented that another well-known individual had offered more than $50 million to purchase the investment share in the Crypto Card technology RIFFO was offering to

J.S.

11.     It was further a part of the scheme and artifice to defraud that another meeting was

held on or about October 7, 2005 among J.S. and defendants RIFFO and MONSON, at which

RIFFO represented that another well-known individual had offered to buy all of the Crypto Card

technology from RIFFO for $500 million, and then resell it to another well-known individual for

$1 billion.  RIFFO also claimed that over 30 scientists throughout the U.S. were working on the

Crypto Card technology, and that RIFFO's family had invested over $75 million in the project,

and that proven prototypes now existed.

12.     It was further a part of the scheme and artifice to defraud that all of the

aforedescribed representations by defendants RIFFO and MONSON to J.S. were false.  Based

upon those representations, the defendants persuaded J.S. to invest in Crypto and Global.  To

memorialize that agreement, J.S. on October 7, 2005 signed a document entitled "Business Asset

Purchase Agreement" ("the Agreement"), with RIFFO and MONSON on behalf of Crypto and

Global.

13.     It was further a part of the scheme and artifice to defraud, and based upon the

representations made by defendants RIFFO and MONSON, that pursuant to the Agreement, J.S.

sent $2.5 million via interstate wire from his Goldman Sachs Account # XXXXXXX8506 with

Citibank, in New York, New York, to Savings Account #XXXXXX3675 at JP Morgan Chase

Bank in Salt Lake City, Utah ("the Chase Savings Account") on or about October 18, 2005.  The

Chase Savings Account was in the name of Dippardo Financial & Guaranty Group ("Dippardo");

defendant RIFFO was the president of that group and sole signer on the account.

14.     It was further a part of the scheme and artifice to defraud that defendant RIFFO

5

opened the Chase Savings Account, as well as Chase Checking Account #XXXXXXX8220 ("the

Chase Checking Account"), on or about October 13, 2005, only five days prior to J.S. depositing

the $2.5 million in the Chase Savings Account.  In opening both Chase accounts, defendant

RIFFO used the social security number of another person, R.M., an individual residing in

Wichita, Kansas.

15.     It was further a part of the scheme and artifice to defraud that prior to J.S.'s $2.5

million deposit in the Chase Savings Account controlled by defendant RIFFO, the account had a

zero balance.  Other than $125,00 later deposited in the account by W.W., the only funds present

in the Chase Savings Account were J.S.'s investment.

16.     It was further a part of the scheme and artifice to defraud that on or about October

20, 2005, two days after J.S. had deposited $2.5 million to invest in the Crypto Card, defendant

RIFFO made several withdrawals from the Chase Savings Account.  RIFFO transferred

approximately $200,000 to Chase Account # XXXXXXX6158, held in the name of Allstate Life

Insurance for an annuity in RIFFO's name.  He took approximately $99,000 out of the Chase

Savings Account to purchase ten official checks that were used to purchase three vehicles for the

personal use of himself and/or his family.  Defendant RIFFO also withdrew another official

check made out to Cash for $10,000.00.  None of these withdrawals of J.S.'s investment were for

the development or manufacture of the Crypto Card, and were solely for the personal benefit of

defendant RIFFO and/or his family.

17.     It was further a part of the scheme and artifice to defraud that on or about

November 2, 2005, and based upon the representations made by defendants RIFFO and

MONSON, and pursuant to the Agreement, J.S. paid MONSON the agreed $37,500.00

6

commission by check #3014 drawn on J.S.'s Account # XXXXXXXX1287 with Bank One in Columbus, Ohio, which MONSON signed over to W.W., who then deposited the check in Account # XXXXX9789 with Zion's Bank in Salt Lake City, Utah. As a result, approximately $37,500.00 was transferred by interstate wire from J.S.'s Bank One Account to W.W.'s Zion's Bank Account.

18.     It was further a part of the scheme and artifice to defraud that on or about November 8, 2005, defendant RIFFO transferred approximately $296,000.00 from the Chase Savings Account to the Chase Checking Account; and that on or about November 16, 2005, RIFFO withdrew another approximately $102,324.39 from the Chase Savings Account, all of which funds were used to purchase a home at 1065 Foothill Drive, Salt Lake City, Utah ("the Foothill Property"), for the personal benefit of defendant RIFFO and/or his family. None of these withdrawals of J.S.'s investment were for the development or manufacture of the Crypto Card.

19.     It was further a part of the scheme and artifice to defraud that on or about November 14, 2005, defendant RIFFO transferred approximately $403,250 from the Chase Savings Account to the Chase Checking Account. That same day, RIFFO transferred from the Chase Checking Account approximately $262,219.91 that was used to purchase for the personal benefit of defendant RIFFO and/or his family a property at 159 South, 300 West, #100, Salt Lake City, Utah ("the Broadway Property"). In addition, on that same day, RIFFO also withdrew approximately $134,397.30 from the Chase Checking account to purchase for the personal benefit of himself and/or his family a property at 1558 West Vivante Way, Salt Lake City, Utah ("the Vivante Way Property"). These withdrawals of J.S.'s investment were not for the development or manufacture of the Crypto Card.

7

20.    It was further a part of the scheme and artifice to defraud that on or about November 22, 2005, defendant RIFFO transferred $200,000.00 from J.S.'s investment funds in the Chase Savings Account to a Chase account held in the name of Allstate Life Insurance for an annuity in the name of RIFFO's wife, P.R.. This withdrawal of J.S.'s investment was not for the development or manufacture of the Crypto Card, and was solely for the personal benefit of defendant RIFFO and/or his family.

21.    It was further a part of the scheme and artifice to defraud that on or about December 6, 2005, defendant RIFFO transferred approximately $5,050.00 from the Chase Savings Account to the Chase Checking Account, and on January 4, 2006, withdrew $520,727.20 from the Chase Savings Account to purchase an official check in the same amount, all of which funds were used to purchase for the personal benefit of RIFFO and/or his family a property at 3125 Kennedy Drive, Salt Lake City, Utah ("the Kennedy Property"). These withdrawals of J.S.'s investment were not for the development or manufacture of the Crypto Card.

22.    It was further a part of the scheme and artifice to defraud that on or about March 6, 2006, defendant RIFFO wire transferred approximately $157,190.15 from the Chase Savings Account to Safford Title Agency, Inc., Account #XXX1232 at Bank One in Safford, Arizona to purchase property located at 821 and 825 West 7th Street, Safford, Arizona ("the Safford Property"), for the personal benefit of RIFFO and/or his family. This withdrawal of J.S.'s investment was not for the development or manufacture of the Crypto Card.

23.    It was further a part of the scheme and artifice to defraud that other than $12,000.00 in the Chase Checking Account at the time J.S. deposited his $2.5 million in the Chase Savings Account, the only deposits made into the Chase Checking Account were transfers

8

by defendant RIFFO of J.S.'s investment funds from the Chase Savings Account.

24.     It was further a part of the scheme and artifice to defraud that defendant RIFFO

never used any of J.S.'s $2.5 million investment for its lawful, represented purpose of developing

and manufacturing the Crypto Card, but instead used those funds for the personal enrichment of

himself and his family.

**Counts 1 and 2**
**18 U.S.C. §§ 1343, 1346 and 2**
**(Wire Fraud)**

25.     The Grand Jury incorporates and realleges the allegations contained in paragraphs

1 through 24 above.

26.     On or about the dates listed below, in the District of Utah,

**JOSE ARTURO RIFFO and**
**ALAN C. MONSON,**

defendants herein, for the purpose of executing said scheme and artifice to defraud, and

attempting to do so, did cause to be transmitted by means of wire communications in interstate

commerce certain writings, signs and signals (to wit: bank transfers of funds):

| Count | Date (on or about) | Sender | Recipient | Amount of Wire Transfer (approximate) |
|-------|--------------------|--------|-----------|---------------------------------------|
| 1 | 10/18/05 | J.S. from Account # XXXXX with Citibank, in New York, New York | defendant RIFFO's Savings Account #XXXXXX3675 at JP Morgan Chase Bank in Salt Lake City, Utah | $2.5 million |

| 2 | 11/2/05 | J.S.'s Account # XXXXXXXXX1287 with Bank One in Columbus, Ohio | defendant MONSON, signed the check over to W.W. to be deposited in Account # XXXXX9789 at Zions Bank in Salt Lake City, Utah | $37,500.00 |

All in violation of 18 U.S.C. §§ 1343, 1346, and 2(a) and (b).

**Counts 3 through 7**
**18 U.S.C. § 1957**
**(Money Laundering)**

27.     The Grand Jury incorporates and realleges the allegations contained in paragraphs

1 through 26 above.

28.     On or about the dates listed below, in the Central Division of the District of Utah,

**JOSE ARTURO RIFFO,**

defendant herein, did knowingly engage and attempt to engage in the following monetary

transactions by, through, or to a financial institution, affecting interstate commerce, in criminally

derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of

U.S. currency, such property having been derived from a specified unlawful activity (to wit: wire

fraud under 18 U.S.C. § 1343):

| Count | Date of Monetary Transaction | Source Account | Instrument | Amount (approximate) | Recipient |
|---|---|---|---|---|---|
| 3 | 11/8/05 | Dippardo Financial & Guaranty Group, Inc., Chase Bank Checking Account # XXXXXX8220 | Check # 1005 | $296,800.00 | US Bank (for payoff of Foothill Property) |
| 4 | 11/16/05 | Dippardo Financial & Guaranty Group, Inc., Chase Bank Savings Account # XXXXXX3675 | Official Check # 825357005 | $102,324.39 | Lundberg & Associates (for payoff of Foothill Property) |

| 5 | 11/14/05 | Dippardo Financial & Guaranty Group, Inc., Chase Bank Checking Account # XXXXXX8220 | Wire transfer | $262,219.91 | Metro National Title, escrow # XXXX4742-JARS, Salt Lake City, UT (purchase of Broadway Property) |
|---|----------|------|------|------|------|
| 6 | 11/14/05 | Dippardo Financial & Guaranty Group, Inc., Chase Bank Checking Account # XXXXXX8220 | Official Check # 121732161 | $134,397.30 | Backman Title (purchase of Vivante Way property) |
| 7 | 1/4/06 | Dippardo Financial & Guaranty Group, Inc., Chase Bank Savings Account # XXXXXX3675 | Official Check # 645516904 | $520,727.20 | Integrated Title Insurance Services (purchase of Kennedy property) |

All in violation of 18 U.S.C. §§ 1957.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

As a result of the offenses alleged in Count 1 of this Indictment, defendant RIFFO shall

forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any and all property, real and

personal, constituting proceeds derived from violations of 18 U.S.C. § 1957, and any property,

real and personal, involved in such offense, and any property traceable thereto, including but not

limited to the following:

- MONEY JUDGMENT in the amount of $2,537,500.00, representing the value of the proceeds obtained by the defendant in connection with the above-referenced offenses.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of defendant RIFFO,

      (1)  cannot be located upon the exercise of due diligence;

      (2)  has been transferred or sold to, or deposited with, a third person;

      (3)  has been placed beyond the jurisdiction of the court;

      (4)  has been substantially diminished in value; or

      (5)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of defendant RIFFO up to the value of the above-forfeitable property.

      A TRUE BILL:

FOREPERSON OF THE GRAND JURY

CARLIE CHRISTENSEN
United States Attorney

TREY MAYFIELD
Assistant United States Attorney

13